FILED

MAY 2 6 2026

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

1. RODERIC JAMES McCORD,

Plaintiff,

Case No. 26 CV - 3 1 0 SEH - CDL

v.

2. BOARD OF COUNTY COMMISSIONERS OF CHEROKEE COUNTY, OKLAHOMA;

3. THE SHERIFF OF CHEROKEE COUNTY (In his Official Capacity);

4. JUDGE KING, (Individually and in his Official Capacity);

5. PRESIDING SECOND JUDGE, (Individually and in his Official Capacity);

6. SHERIFF DEPUTY JOHN, (Individually and in his Official Capacity);

7. MEDICAL STAFF NURSE TAYLOR, (Individually and in her Official Capacity);

8. CORRECTIONAL OFFICER JAY, (Individually and in his Official Capacity);

9. JANE DOE BLONDE ATTORNEY PRESENT IN JUDGE KING'S COURT ROOM, (Individually);

10. TJ GIRDNER: Sued in his official capacity as the Administrator of the Cherokee County Detention Center,

Defendants.

**FEDERAL COMPLAINT PURSUANT TO 42 U.S.C. § 1983 FOR VIOLATIONS OF CONSTITUTIONAL RIGHTS AND ARTICLE 36 OF THE VIENNA CONVENTION ON CONSULAR RELATIONS**

**(JURY TRIAL DEMANDED)**

## I. PRELIMINARY STATEMENT

This is a civil rights action brought pursuant to 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, and Article 36 of the Vienna Convention on Consular Relations. Plaintiff Roderic James McCord, an honorable, 100% service-connected disabled military veteran and a Canadian citizen, was subjected to immediate racial animus, an unlawful summary contempt arrest, a total denial of criminal due process, and an intentional, coordinated suppression of his international treaty rights by public officials in Cherokee County, Oklahoma. Plaintiff seeks compensatory and punitive damages in the amount of $25,000,000.00 to redress these severe structural abuses of power.

ifp pend
Ø summons

## II. JURISDICTION AND VENUE

1 This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because the action arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983 and Article 36 of the Vienna Convention on Consular Relations. Under Missouri v. Holland, 252 U.S. 416 (1920), treaties ratified by the United States constitute the Supreme Law of the Land.

2 This Court further possesses diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the Plaintiff is a citizen and resident of the State of New York (and a citizen of Canada), the Defendants are all residents and citizens of the State of Oklahoma, and the amount in controversy strictly exceeds $75,000.00, exclusive of interest and costs, totaling a demand of $25,000,000.00.

3 Venue is laid in this judicial district pursuant to 28 U.S.C. § 1391. Concurrently with the filing of this Complaint, Plaintiff has filed an Emergency Motion to Transfer Venue to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a) due to pervasive local prejudice and systemic judicial bias within the local territory.

## III. PARTIES

4. Plaintiff **RODERIC JAMES McCORD** is a natural person residing in Manhattan, New York City, New York. Plaintiff is a citizen of Canada and an honorably discharged United States Army Engineer veteran of the 120th Engineering Battalion, holding a 100% service-connected disability rating.

5. Defendant **BOARD OF COUNTY COMMISSIONERS OF CHEROKEE COUNTY, OKLAHOMA**, is a political corporate subdivision of the State of Oklahoma responsible for funding, maintaining, and overseeing operations, training, and customs at the Cherokee County Jail and Courthouse.

6. Defendant **THE SHERIFF OF CHEROKEE COUNTY** is sued in his official capacity as the chief law enforcement officer responsible for executing courthouse security, jail administration, and ensuring that all deputies, staff, and contractors comply with federal, constitutional, and international treaty mandates.

7. Defendant **JUDGE KING** was at all times relevant a state judicial officer acting under color of state law as a District Judge for Cherokee County, Oklahoma. He is sued in his individual and official capacity.

8. Defendant **PRESIDING SECOND JUDGE** was at all times relevant a state judicial officer acting under color of state law as a judge for Cherokee County, Oklahoma. He is sued in his individual and official capacity.

9. Defendant **SHERIFF DEPUTY JOHN** was at all times relevant acting under color of state law as a courtroom bailiff and law enforcement officer employed by the Cherokee County Sheriff's Department. He is sued in his individual capacity and official capacity.

10. Defendant **MEDICAL STAFF NURSE TAYLOR** was at all times relevant acting under color of state law as an intake medical screening nurse or healthcare contractor working inside the Cherokee County Jail. She is sued in her individual and official capacity.

11. Defendant **CORRECTIONAL OFFICER JAY** was at all times relevant acting under color of state law as a jailer and detention officer employed at the Cherokee County Jail. He is sued in his individual capacity and official capacity.

12. Defendant **JANE DOE BLONDE ATTORNEY** was at all times relevant either as an officer of the court or defense counsel practicing within Judge King's courtroom who actively participated under color of state law or in a coordinated fashion with state actors to deprive Plaintiff of his rights. She is sued in her individual capacity and in the possibility of her official capacity.

13. Defendant **TJ GIRDNER**: Sued in his official capacity as the Administrator of the Cherokee County Detention Center, responsible for executing jail administration, overseeing the digital grievance servers, and ensuring that all detention staff and medical contractors (including **Nurse Taylor** and **CO Jay**) comply with international treaty mandates.

## IV. STATEMENT OF FACTS

14. On May 20, 2026, Plaintiff appeared pro se at the Cherokee County Courthouse in Oklahoma for a scheduled civil expungement hearing, utilizing standardized paperwork obtained directly from the Oklahoma State Bureau of Investigation (OSBI).

15. Plaintiff appeared in open court cleanly and professionally dressed in a suit. Upon stepping forward, Defendant Judge King exhibited immediate, unprovoked hostility and racial animus, visibly disturbed by a Black male presenting a highly articulate, properly documented legal matter.

16. Defendant Judge King aggressively opposed the application, falsely claiming it was filed incorrectly. When Plaintiff respectfully presented the physical documentation proving compliance with OSBI mandates, Judge King became visibly furious, refused to review the legal parameters, and ordered Plaintiff to immediately exit the courtroom under threat of contempt.

17. Maintaining the disciplined carriage of a military veteran, Plaintiff executed a sharp "about-face" turn to exit the courtroom and proudly stated, "Engineers lead the way HUAH!"

18. Out of pure personal retaliation, Defendant Judge King ordered Plaintiff immediately detained for criminal contempt.

19. Following the clearance of the court docket, Judge King ordered Plaintiff hauled back out and demanded a personal apology. Plaintiff explicitly noted the structural defect of the proceeding, stating: "Your Mickey Mouse courtroom doesn't even have a stenographer in it... how can you prove I was in contempt? How are you even having court without having a stenographer?"

20. After Plaintiff proudly repeated, "Engineers lead the way HUAH!", Judge King finalized the summary criminal contempt detention and ordered him transferred to the county jail without creating an official verbatim transcript or written factual record.

21. Immediately upon his initial arrest, Plaintiff explicitly informed the courtroom bailiff, Defendant Sheriff Deputy John, that he was a Canadian citizen and formally requested that the Canadian Consulate be notified of his detention without delay. Defendant Deputy John flatly refused and suppressed the request.

22. While being led through the courthouse hallways in custody, Defendant Jane Doe Blonde Attorney walked alongside Plaintiff, openly mocking his international status, shouting maliciously, "Oh, he says he's Canadian!" to validate and encourage the hostile actions of the deputies.

23. Upon entry into the Cherokee County Jail, Plaintiff repeated his international treaty notice and request for consular access to the intake medical contractor, Defendant Nurse Taylor, and the processing jailer, Defendant Correctional Officer Jay. Both individuals possessed actual notice of his Canadian citizenship but completely refused to contact the consulate.

24. On May 21, 2026, Plaintiff was brought back into the courtroom in physical shackles before a second, alternate Presiding Judge. An official court stenographer was present.

25. During this appearance, the Presiding Second Judge completely abandoned fundamental constitutional due process. The judge failed to conduct an arraignment, failed to ask Plaintiff for a plea, and completely denied Plaintiff

an evidentiary hearing, a trial, or the right to call and cross-examine witnesses. The judge summarily convicted Plaintiff and passed a criminal sentence of three (3) days in jail.

26. Immediately following this unlawful sentencing, Plaintiff directly questioned the judge on the record: "Why are you denying me my rights and Canadian Consulate services?" 27. The Presiding Second Judge falsely and unlawfully answered that Plaintiff "have to fill out an application with the courts" before consular notification could occur, openly documenting an intentional, state-mandated delay and violation of an international treaty on the official record.

27. While confined, Plaintiff utilized the jail's internal electronic tablet communication kiosk to submit three (3) distinct, formal grievances to jail administration, explicitly demanding the preservation of all data, logs, and video, and explicitly warning that "any failure to preserve this data and these grievances will constitute a SPOLIATION OF EVIDENCE in a lawsuit to sue them."

## V. FIRST CLAIM FOR RELIEF

Violation of Due Process Under the Fourteenth Amendment / 42 U.S.C. § 1983 (Against Defendants Judge King, Presiding Second Judge, and Deputy John)

28. Plaintiff realleges and incorporates paragraphs 1 through 28 as though fully set forth herein.

29. The Supreme Court of the United States has clearly established that when a criminal contempt proceeding is transferred to a judge other than the one reviled by the contemnor, summary procedures are completely prohibited. Under Taylor v. Hayes, 418 U.S. 488 (1974) and Cooke v. United States, 267 U.S. 517 (1925), due process mandates that the accused must be afforded formal notice, a right to counsel, an arraignment, and an evidentiary trial.

30. The Presiding Second Judge intentionally and maliciously circumvented these clearly established constitutional mandates by convicting and sentencing Plaintiff without an arraignment, without entering a plea, and without conducting a trial, violating the baseline procedural protections guaranteed by In re Oliver, 333 U.S. 257 (1948).

31. By executing these ultra vires actions in the clear absence of all jurisdiction, the judicial officers are stripped of absolute judicial immunity.

## VI. SECOND CLAIM FOR RELIEF

Violation of Article 36 of the Vienna Convention on Consular Relations / 42 U.S.C. § 1983 (Against Defendants Sheriff, Deputy John, Nurse Taylor, and CO Jay)

32. Plaintiff realleges and incorporates paragraphs 1 through 32 as though fully set forth herein.

33. Article 36 of the Vienna Convention on Consular Relations explicitly guarantees that local law enforcement authorities must inform a detained foreign national of their rights without delay and, upon request, notify the appropriate foreign consulate.

34. Federal appellate courts have established that Article 36 confers individually enforceable rights actionable under 42 U.S.C. § 1983. See Jogi v. Voges, 480 F.3d 822 (7th Cir. 2007) (holding that state officials who ignore Article 36 notification mandates are subject to civil liability).

35. Defendants Deputy John, Nurse Taylor, and Correctional Officer Jay had immediate, subjective notice of Plaintiff's Canadian citizenship and explicit request for access, yet completely refused compliance.

36. The Presiding Second Judge's explicit demand on the record that Plaintiff must "fill out a local application" is a direct violation of the Supremacy Clause of the United States Constitution, proving institutional malice and intentional disregard of the treaty's mandate of notification "without delay."

## VII. THIRD CLAIM FOR RELIEF

Violation of Equal Protection / Racial Discrimination / 42 U.S.C. § 1983 (Against Defendants Judge King and Jane Doe Blonde Attorney)

37. Plaintiff realleges and incorporates paragraphs 1 through 37 as though fully set forth herein.

38. The Equal Protection Clause of the Fourteenth Amendment prohibits state actors from intentionally discriminating against individuals based upon race. See Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252 (1977).

39. Defendant Judge King targeted, harassed, and summarily imprisoned Plaintiff based upon open racial animus, punishing a Black male for successfully presenting a professional legal application.

40. Defendant Jane Doe Blonde Attorney acted in coordinated concert with hostile state actors to subject Plaintiff to racially charged humiliation and mockery, directly validating his lawless detention.

## VIII. FOURTH CLAIM FOR RELIEF

Municipal Liability for Unconstitutional Customs and Failure to Train (Monell Doctrine) (Against Defendants Board of County Commissioners and Sheriff of Cherokee County)

41. Plaintiff realleges and incorporates paragraphs 1 through 41 as though fully set forth herein.

42. Under Monell v. Department of Social Services, 436 U.S. 658 (1978), a municipality or county entity is liable under § 1983 when its official policies, customs, or practices cause the deprivation of constitutional or statutory rights.

43. Furthermore, under City of Canton v. Harris, 489 U.S. 378 (1989), a municipality's failure to train its employees constitutes an actionable policy of "deliberate indifference" to the rights of persons with whom the employees come into contact.

44. The Board of County Commissioners and the Sheriff maintained a widespread, systematic custom of ignoring the international treaty obligations of the Vienna Convention, entirely failing to train their courtroom deputies, intake medical contractors, and jail staff on mandatory consular notification protocols.

45. This institutional deliberate indifference was the direct and proximate cause of Plaintiff being held in unlawful diplomatic isolation for the duration of his confinement.

**IX. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants and grant the following relief:

A. Compensatory damages against all Defendants, jointly and severally, for physical confinement, emotional distress, violation of constitutional protections, and loss of liberty in the amount of $25,000,000.00;

B. Punitive damages against the individual Defendants in their individual capacities for their malicious, reckless, and intentional disregard of Plaintiff's clearly established constitutional and federal treaty rights;

C. Declaratory Judgment declaring that the Defendants' actions, policies, and failure to train violated the United States Constitution and the Vienna Convention;

D. An award of reasonable litigation costs and expenses incurred in this action; and

E. A full expungement and seal of all of Roderic James McCord's court records in the State of Oklahoma

F. Any such other and further relief as this Court deems just, proper, and equitable under the law.

**X. JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: May 25, 2026

Respectfully submitted,

Roderic James McCord,

Plaintiff Pro Se

205 West 119th Street, Apt 5D

New York, NY 10026

(646) 956-8677